IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          )
                                  )
          v.                      )  Criminal Nos. 04-309-2
                                  )
RONELL SMITH                      )


O P I N I O N

DIAMOND, D.J.

        Presently before the court is a motion to vacate, set aside or
correct sentence pursuant to 28 U.S.C. §2255 filed by Ronell Smith
("petitioner").  For the following reasons, petitioner's motion will be
granted in part and denied in part.  While the court finds no basis to
permit petitioner to withdraw his guilty plea, the sentence imposed on
July 20, 2006, will be vacated, and petitioner will be granted a re-
sentencing hearing.

        On December 7, 2004, a grand jury returned a one-count indictment
charging petitioner, along with Eric DeShawn Irvin and Maurice Watkins,
with conspiracy to distribute and to possess with intent to distribute
one kilogram or more of heroin in violation of 21 U.S.C. §846.  On March
28, 2006, petitioner appeared before this member of the court and
changed his previously entered plea of not guilty to guilty at Count One
pursuant to a written plea agreement.  A presentence report was ordered
and a sentencing date was set.

        After receipt of the presentence report this court issued a
memorandum order and tentative findings and rulings which, *inter alia*,
found petitioner to be a career offender pursuant to U.S.S.G. §4B1.1(a).
This finding increased petitioner's total offense level from 29 to 34,
and his criminal history category from V to VI, resulting in an advisory
guideline range of 262-327 months.

Nearly a month after the tentative findings were issued, and one day prior to the scheduled sentencing date, the court received a letter from petitioner which the court construed as a *pro se* motion to withdraw guilty plea. In the letter, petitioner alleged that his retained counsel, Stephen Greenberg, had indicated that petitioner would receive a sentence of 120 months if he pled guilty, then later promised that, at most, petitioner would receive 156 months. Because of these alleged misrepresentations, petitioner sought to withdraw his plea of guilty. The court denied petitioner's motion to withdraw guilty plea by memorandum order, finding that petitioner had not provided a "'fair and just reason' for withdrawing his plea, either by asserting his actual innocence or otherwise advancing legitimate reasons sufficient to permit the withdrawal of his guilty plea."

The following day, prior to the sentencing hearing, the court met in chambers with the attorneys for petitioner and co-defendants Irvin and Watkins, as well as Assistant United States Attorney Margaret Picking. Attorney Greenberg stated that he found "it very hard to continue to represent [petitioner]" in light of petitioner's allegations that he had been lied to and promised a sentence of 10 years or, at most, 156 months. Attorney Mark Lancaster, representing Eric Irvin, who also had filed a *pro se* motion to withdraw guilty plea raising allegations against his counsel similar to those raised by petitioner, expressed identical concerns regarding his continued representation of Irvin. The court advised both counsel that it was not inclined to permit either attorney to withdraw from representation at the last minute, and proceeded to the sentencing hearing.

At sentencing, petitioner stated that he would like for the court to appoint him new counsel and that he was "filing for ineffective

AO 72
(Rev. 8/82)

assistance of counsel." The court denied his request for a new attorney and advised him that then was not the time to argue ineffective assistance of counsel. The court imposed a sentence of 262 months imprisonment, the low end of the advisory guideline range.

Petitioner, represented by Attorney Diana Stavroulakis, filed a direct appeal arguing only that this court erred by denying petitioner's motion to withdraw guilty plea. The Third Circuit Court of Appeals dismissed the appeal finding that petitioner knowingly and voluntarily waived his right to file a direct appeal. Petitioner sought a writ of certiorari in the United States Supreme Court which was denied.

Petitioner timely filed the pending §2255 motion[1] in which he asserts four grounds for relief: (1) trial counsel was ineffective in failing to inform him that he might be classified as a career offender under U.S.S.G. §4B1.1(a) and in advising him that his prior convictions would not be used against him; (2) trial counsel was ineffective in failing to explain to him the difference between 21 U.S.C. §851 and U.S.S.G. §4B1.1 and in failing to challenge the court's finding that petitioner is a career offender; (3) trial counsel was ineffective in failing to investigate the crime to which petitioner pled guilty; and, (4) appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel on direct appeal.

---

[1] Pursuant to 28 U.S.C. §2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a). Relief under §2255 is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." United States v. Gordon, 979 F.Supp. 337, 339 (E.D.Pa. 1997) (citing Hill v. United States, 368 U.S. 424, 428 (1962)).

AO 72
(Rev. 8/82)

The government has filed a response asking this court to enforce the provision of the parties' plea agreement by which petitioner waived his right to file a §2255 motion or any other collateral proceeding attacking his conviction and sentence. For the following reasons the court finds that, although petitioner's waiver of his right to seek relief under §2255 was knowingly and voluntarily made, enforcement of that waiver in this case would work a miscarriage of justice solely as it relates to petitioner's sentence.

As noted, petitioner in this case entered into a negotiated plea agreement with the United States Attorney for the Western District of Pennsylvania which contained a provision expressly waiving his collateral attack rights. This waiver provision provides:

> "[Petitioner] further waives the right to file a motion to vacate sentence, under 28 U.S.C. §2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence."

Plea Agreement, ¶A3.

The Court of Appeals for the Third Circuit has recognized that a defendant's waiver of his right to file a §2255 motion or other collateral proceeding attacking his conviction and sentence is enforceable "provided that [it is] entered into knowingly and voluntarily <u>and</u> [its] enforcement does not work a miscarriage of justice." <u>United States v. Mabry</u>, 536 F.3d 231, 237 (3d Cir. 2008). (emphasis added).

As a threshold matter, this court finds that petitioner's waiver of his collateral attack rights was knowing and voluntary for the same reasons that the appellate court found that petitioner's waiver of his direct appeal rights was knowing and voluntary. Specifically, the Court of Appeals observed that:

At the plea hearing, the District Court conducted a proper colloquy with Smith, inquiring about his understanding of the criminal charge and the applicable sentencing range. The District Court also ensured that Smith understood that his sentence would be given later after review of the presentence report and other documents ... The District Court then ascertained that Smith read the plea agreement with counsel, and confirmed that the plea agreement expressed the entire bargain between the government and himself. Smith attested that he signed the plea agreement voluntarily, free of any coercion. After this, Smith's attorney stated that Smith signed the document knowingly and voluntarily. Finally, Smith declined the opportunity to ask further questions. After all of this, Smith pled guilty ...."

United States v. Smith, 351 Fed. Appx. 635, 635-36 (3d Cir. 2009). Based on the foregoing, the appellate court found that petitioner's waiver of his direct appeal rights was knowingly and voluntarily made. Id. Just as petitioner's waiver of his direct appeal rights was knowing and voluntary, so too was his waiver of his collateral attack rights.

Whether a defendant knowingly and voluntarily enters into a plea agreement containing a waiver turns on whether the "the district court inform[ed] the defendant of, and determine[d] that the defendant underst[ood] the terms of any plea agreement provisions waiving the right ... to collaterally attack the sentence as Federal Rule Criminal Procedure 11(b)(1)(N) requires." Mabry, 536 F.3d at 239.

The court is satisfied here that petitioner adequately understood the terms of his plea agreement waiving his collateral attack rights. Although a review of the change of plea colloquy indicates that this court did not strictly adhere to Federal Rule of Criminal Procedure 11(b)(1)(N), which requires the court, not the government or defense counsel, to address the defendant in a plea hearing and inform him that he is waiving the right to appeal and to collaterally attack his sentence with a §2255 motion, the court finds in this case that this error did not affect petitioner's substantial rights and is no ground

to render petitioner's waiver of his collateral attack rights unenforceable. See United States v. Goodson, 544 F.3d 529, 539 (3d Cir. 2008) (deficient plea colloquy did not preclude defendant from understanding that he had waived his appellate rights, and holding that the defendant's substantial rights were not affected).

In this case, petitioner's collateral attack waiver, just as the appellate waiver which the Third Circuit Court of Appeals found valid and enforceable on direct review, was clearly set forth in the written plea agreement. Plea Agreement, ¶A3. The government summarized the plea agreement at the plea hearing and reviewed all of the agreement's terms, including the collateral attack waiver provision, specifically noting that "Mr. Smith waives the right to file a motion pursuant to 28 U.S.C. Section 2255." Plea Transcript at 16. When the court asked petitioner whether he had any questions regarding the plea agreement, he stated under oath that he did not. Id. at 18. Petitioner executed the plea agreement, acknowledging that he had read the document and had discussed it with his attorney, and affirmed under oath that he had done so. It is clear from the record that petitioner's assent to the plea agreement, including the collateral attack waiver provision, was voluntary and knowing and that he acknowledged the agreement while under oath.

Thus, despite the court's failure to strictly adhere to Fed. R. Crim. P. 11(b)(1)(N), petitioner cannot show that the court's error affected his substantial rights or precluded him from understanding his waiver. Instead, the record shows that petitioner understood that by pleading guilty he was giving up his right to file a §2255 motion or other collateral motion attacking his conviction or sentence.

Petitioner also argues that he did not agree to the waiver knowingly and voluntarily because his attorney falsely "promised" him that he would receive only the mandatory minimum sentence of 120 months, or, "at most" 156 months. However, even assuming petitioner's counsel did misrepresent the sentence that plaintiff might receive, such statements would not render petitioner's waiver involuntary.

The record shows that petitioner was well-aware of the potential sentencing ramifications of his guilty plea. During the plea colloquy, the court advised petitioner that he "would be subject to a penalty of not less than ten years imprisonment and it could be as much as life." Plea Transcript at 11. The court also explicitly advised petitioner that:

> the actual penalty that would be imposed would be determined by the Court following information which it will receive from the presentence investigation report and possibly other sources. And when the Court acquires all of that information, then the Court will formulate a sentencing range which could not be less than the mandatory minimums that I have indicated to you, but could possibly be more than those mandatory minimums."

Plea Transcript at 12-13. (emphasis added).

The court also advised petitioner that the court did not yet have that additional information and had not yet formulated the sentencing range, but, "when I do and publish that to you and your lawyer ... you will not be permitted to withdraw your plea at that time simply because you are not satisfied with that sentencing range. Do you understand that?" Plea Transcript at 13. Petitioner responded "[y]es, sir." Id.

Thus, even if petitioner's counsel had "promised" petitioner that he would receive a sentence of only 120, or 156, months, it is clear that petitioner understood that there was nothing in the plea agreement which guaranteed him an actual sentence of the mandatory minimum, or of

AO 72
(Rev. 8/82)

156 months, or of any other specific sentence.[2]  Rather, petitioner knowingly and voluntarily entered the plea with full knowledge of the potential sentencing ramifications.  See United States v. Irvin, 429 Fed. Appx. 182, 185-188 (3d Cir. 2011) (finding that the appellate waiver entered into by petitioner's co-defendant Eric Irvin was knowing and voluntary despite Irvin's contention that his attorney had promised him a 120-month sentence).

Although the court is satisfied that petitioner's waiver of his collateral attack rights was knowing and voluntary, that does not end the inquiry.  In determining whether to enforce a waiver, the court must also examine whether enforcement of that waiver, even if knowing and voluntary, would work a miscarriage of justice.  Mabry, 536 F.3d at 237.  "[A] court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice based on the record evidence before it."  Id. at 237-38.  This court is to use a common sense approach and "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver."  Mabry, 536 F.3d at 243.

Here, upon examination of the underlying facts, the court is constrained to conclude that enforcement of the collateral attack waiver in this case would work a manifest injustice based on this court's denial of petitioner's day-of-sentencing request for new counsel.

In making this determination, the court is guided by the decision of the Third Circuit Court of Appeals regarding petitioner's co-defendant in United States v. Irvin.  Therein, the appellate court found

---

[2]    The court notes that when asked at the change of plea hearing whether any other promises other than those in the plea bargain letter had been made to induce him to enter his plea, petitioner responded "[n]o, sir."  Plea Transcript at 14.

that this court's failure to inquire as to the reasons underlying Irvin's request for new counsel not only was erroneous, "but rises to the level of manifest injustice sufficient to justify setting aside the appellate waiver to which Irvin assented in his plea agreement." 429 Fed. Appx. at 187. As a result of this error, Irvin's sentence was vacated and his case was remanded for re-sentencing.

Just as in Irvin, petitioner here raised allegations in his *pro se* motion to withdraw guilty plea that his attorney had made promises regarding his sentence which were not reflected in the presentence investigation report. In light of this motion, Attorney Greenberg, like Irvin's counsel, indicated to the court that he believed that petitioner's allegations "represent a complete breakdown of the attorney/client relationship" and that he would "find it very hard to continue to represent [petitioner]." Sentencing Transcript at 8. When petitioner indicated at the sentencing hearing that he wanted new counsel, his request, like Irvin's, was denied without inquiry. The Third Circuit Court of Appeals having concluded in Irvin that this court committed error amounting to manifest injustice under these identical circumstances, this court is constrained to so conclude in this case as well. Accordingly, as in Irvin, petitioner's sentence will be vacated and the court will hold a re-sentencing with new counsel, either to be appointed or retained by petitioner.

Although the court has found that petitioner's sentence must be vacated based upon this court's error in not inquiring as to the reasons for petitioner's request for new counsel at the sentencing hearing, the court does not find that petitioner has asserted any basis upon which to permit him to withdraw his guilty plea based upon his claims of ineffective assistance of counsel.

AO 72
(Rev. 8/82)

In order to establish constitutionally ineffective assistance of counsel, a petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that the deficient performance actually prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). In the context of a guilty plea, the prejudice prong of the <u>Strickland</u> test can be met by a showing that, but for counsel's errors, petitioner would have proceeded to trial instead of pleading guilty. <u>Hill v. Lockhart</u>, 474 U.S. 52, 56-59 (1985); <u>United States v. Nahodil</u>, 36 F.3d 323, 326 (3d Cir. 1994).

Here, petitioner asserts that his counsel failed to inform him that he might be a career offender under the sentencing guidelines, that counsel advised him that his prior convictions would not be used against him and that counsel failed to explain to him the difference between 21 U.S.C. §851 and U.S.S.G. §4B1.1. Petitioner now asserts that had he been properly advised he would not have pled guilty but would have gone to trial. However, even assuming petitioner's allegations are true,[3] and even if such improper advice amounted to deficient performance, petitioner cannot show prejudice because even his attorney's ineffectiveness as alleged would not provide petitioner a basis to withdraw his guilty plea.

Fed.R.Crim.P. 11(d) provides that "[a] defendant may withdraw a plea of guilty ... (2) after the court accepts the plea, but before it imposes sentence if: ... (B) the defendant can show a fair and just reason for requesting the withdrawal." In evaluating the merits of a motion to withdraw a guilty plea, the court must consider three factors:

---

[3] In light of Attorney Greenberg's death in a car accident in November of 2010, the court is unable to determine the accuracy of petitioner's assertions.

AO 72
(Rev. 8/82)

(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and, (3) whether the government would be prejudiced by the withdrawal.   United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003).

First, petitioner has not made any credible assertions of his innocence.   To the contrary, petitioner knowingly and voluntarily acknowledged at his plea hearing that the government's summary of the evidence as it pertained to him was accurate, with the exception of the weight of a brick of heroin.   Plea Transcript at 24.   Also, in his *pro se* motion to withdraw guilty plea, petitioner expressly stated that he was "still in agreement of the 120 months agreed upon" in the plea letter.

Moreover, as already discussed, petitioner was advised by the court at the plea hearing that the actual penalty imposed would be determined following receipt of the presentence report and based on application of the advisory sentencing guidelines and that the sentencing range could not be less than the mandatory minimums but could possibly be more. Despite full knowledge of the ramifications of his guilty plea, and that his sentence could be more than 120 months, petitioner knowingly and voluntarily pled guilty.

To the extent petitioner alleges that his plea was not knowing and voluntary because of his counsel's alleged misrepresentations, this same argument was rejected by the Third Circuit Court of Appeals when raised by petitioner's co-defendant Eric Irvin.   In Irvin's case, the court noted that even if Irvin's counsel had misrepresented the sentence petitioner would receive, Irvin nevertheless displayed a complete understanding of the actual sentencing ramifications of his guilty plea during the plea colloquy.   Irvin, 429 Fed. Appx. at 188.

Likewise here, any arguable ineffectiveness on the part of petitioner's counsel in advising him as to the potential sentencing consequences of a guilty plea does not negate the voluntary and knowing nature of petitioner's plea. As the appellate court noted in Irvin, at its essence, petitioner's reasons for wanting to withdraw his plea appear to be because he is dissatisfied with the advisory sentencing range, which is not sufficient to permit the withdrawal of his guilty plea, even if his counsel provided inaccurate advice regarding the sentencing consequences of that plea. Id. at 188. Accordingly, petitioner has failed to establish a fair and just reason to permit him to withdraw his knowing and voluntary guilty plea even if his counsel had been ineffective.

To the extent petitioner alleges ineffectiveness of trial counsel in failing to challenge his career offender status or raise other objections to the presentence report, the court need not consider those claims as petitioner will have an opportunity to raise any objections that he may have at his re-sentencing hearing. Likewise, the court need not address petitioner's claims of ineffective assistance of appellate counsel for failing to raise ineffective assistance of trial counsel on direct appeal.

For the reasons set forth above, petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 will be granted in part and denied in part. The sentence imposed by the court on July 20, 2006, will be vacated and a re-sentencing date will be set after petitioner notifies the court whether he wishes to retain new counsel or have new counsel appointed to represent him at the re-sentencing hearing.

AO 72
(Rev. 8/82)

An appropriate order will follow.

Date: _December 17, 2012_          _Gustave Diamond_
                                   Gustave Diamond
                                   United States District Judge

cc:   Margaret E. Picking
      Assistant U.S. Attorney

      Ronell Smith